1 **KRIS J. KRAUS**
California State Bar No. 233699
2 **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
3 San Diego, California 92101-5008
Telephone: (619) 234-8467
4 Kris_Kraus@fd.org

5 Attorneys for Mr. Juan Pablo Prieto-Aparicio

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 08CR2583-TJW |
| Plaintiff, | DATE: September 15, 2008 |
| | TIME: 2:00 p.m. |
| v. | |
| | <u>NOTICE OF MOTIONS AND MOTIONS TO:</u> |
| JUAN PABLO PRIETO-APARICIO, | |
| | 1) DISMISS THE INDICTMENT BECAUSE IT FAILS TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSE; |
| Defendant. | |
| | 2) SUPPRESS ANY PRE-<u>MIRANDA</u> WARNING STATEMENTS BY MR. PRIETO-APARICIO; |
| | 3) REQUEST FOR THE GRAND JURY TRANSCRIPT; AND |
| | 4) GRANT LEAVE TO FILE FURTHER MOTIONS. |

TO:   KAREN P. HEWITT, UNITED STATES ATTORNEY, AND
      DOUGLAS KEEHN ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on September 15, 2008, at 2:00 p.m., or as soon thereafter as counsel may be heard, defendant, Juan Pablo Prieto-Aparicio, by and through his attorneys, Kris J. Kraus, and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the following motions.

**MOTIONS**

Defendant, Juan Pablo Prieto-Aparicio, by and through his attorneys, Kris J. Kraus, and Federal Defenders of San Diego, Inc., asks this Court pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law, and local rules for an order to:

1    (1)   DISMISS THE INDICTMENT BECAUSE IT FAILS TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSE:

2

3    (2)   SUPPRESS ANY PRE-<u>MIRANDA</u> WARNING STATEMENTS BY MR. PRIETO-APARICIO;

4    (3)   REQUEST FOR THE GRAND JURY TRANSCRIPT; AND

5    (4)   GRANT LEAVE TO FILE FURTHER MOTIONS.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of these motions.

Respectfully submitted,

Dated: August 29, 2008            /s/ Kris J. Kraus
**KRIS J. KRAUS**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Juan Pablo Prieto-Aparicio
Kris_Kraus@fd.org

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of her information and belief, and that a copy of the foregoing document has been served this day upon:

Douglas Keehn
U S Attorneys Office Southern District of California
880 Front Street
Room 6293
San Diego, CA 92101
(619)557-5610
Fax: (619)557-5917
Email:douglas.keehn@usdoj.gov

Dated: September 2, 2008             /s/  Kris J. Kraus
                                    KRIS J. KRAUS
                                    Federal Defenders
                                    225 Broadway, Suite 900
                                    San Diego, CA 92101-5030
                                    (619) 234-8467  (tel)
                                    (619) 687-2666  (fax)
                                    e-mail: kris_kraus@fd.org

1  **KRIS J. KRAUS**
   California State Bar No. 233699
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California 92101-5030
   Telephone: (619) 234-8467
4  Kris_Kraus@fd.org

5  Attorneys for Mr. Juan Pablo Prieto-Aparicio

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.: 08CR2583-TJW |
| Plaintiff, ) | |
| v. ) | STATEMENT OF FACTS AND |
| JUAN PABLO PRIETO-APARICIO, ) | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS |
| Defendant. ) | |

**I.**

**STATEMENT OF FACTS**[1]

Mr. Prieto-Aparicio incorporates by reference the facts recounted in his previously filed motions.

**II.**

**THIS COURT SHOULD DISMISS THE INDICTMENT FOR ITS FAILURE TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSE**

Mr. Prieto-Aparicio has been charged with attempted entry, a violation of Title 8 U.S.C. § 1326. The indictment fails to state an offense, since it does not allege that Mr. Prieto-Aparicio committed an overt act -- a required element in "attempt" cases. See United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1196 (9th Cir.

---

[1] The statement of facts in the previous motions were based, in part, on materials received from the government. Mr. Prieto-Aparicio does not accept this statement of facts as his own, and reserves the right to take a contrary position at motions hearing and trial. The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard

2000) (en banc). The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); see also, United States v. Pernillo-Fuentes, 252 F.3d 1030 (9th Cir. 2001).

**A.     The Indictment Fails to State an Offense, Since it Does Not Allege That Mr. Prieto-Aparicio Committed an Overt Act**

The purpose of an overt act element, in an attempt indictment, is to protect the innocent, by showing that the prohibited actions must be more than just thought or "mere preparation." See Rollin M. Perkins & Ronald N. Boyce, Criminal Law § 3.A.7, at 637 (3d ed. 1982). The Ninth Circuit has held that "failure to allege any specific overt act that is a substantial step toward entry is a fatal defect in an indictment for attempted entry following deportation under 8 U.S.C. §1326." United States v. Resendiz-Ponce, 425 F.3d 729 (9th Cir. 2005). Without alleging an overt act the indictment in this case fails to allege an essential element, and in doing so it fails to state an offense. This is a fatal flaw, and dismissal of the indictment is required. Du Bo, 186 F.3d at 1179

   **1.     *The Commission of an Overt Act Is a Required Element in "Attempt Crimes"***

An overt act is required to protect the innocent from conviction for merely thinking about committing a crime. "The common law meaning of 'attempt' is the specific intent to 'engage in criminal conduct and ... an overt act which is a substantial step towards committing the crime.'" Gracidas-Ulibarry, 231 F.3d at 1192, citing United States v. Arbelaez, 812 F.2d 530, 534 (9th Cir.1987); accord United States v. Bailey, 444 U.S. 394, 405 (1980); Wooldridge v. United States, 237 F. 775, 778-79 (9th Cir.1916) (collecting common law sources "holding that, to constitute an attempt, there must be the intent to commit a crime and some act done toward its consummation, and that the term 'attempt' signifies both an act and the intent with which it is done"); 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 6.2, at 18 (1986) ("The crime of attempt . . . [at] common law . . . consists of: (1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which . . . goes beyond mere preparation.").

//

The Ninth Circuit en banc has adopted the common-law definition of attempt and has held that "the elements of the crime of attempted illegal reentry into the United States under 8 U.S.C. § 1326 are: (1) the defendant had the purpose, i.e., conscious desire, to reenter the United States without the express consent of the Attorney General; (2) *the defendant committed an overt act that was a substantial step towards reentering without that consent*; (3) the defendant was not a citizen of the United States; (4) the defendant had previously been lawfully denied admission, excluded, deported or removed from the United States; and (5) the Attorney General had not consented to the defendant's attempted reentry." Gracidas-Ulibarry, 231 F.3d at 1196 (emphasis added).

### 2. *The Indictment Must Be Dismissed Because It Does Not Allege an Overt Act That Was a Substantial Step Which Corroborates the Mens Rea of the Charged Offense.*

In an attempt to comply with Resendiz-Ponce, the indictment alleges that Mr. Prieto-Aparicio "committed an overt act, to wit, crossing the border from Mexico into the United States, that was a substantial step towards committing the offense."

However, merely stating that a particular act is a substantial step, however, does not satisfy the Ninth Circuit's description of that element. The "purpose of [the] substantial step requirement in attempt crimes is to corroborate the actor's specific intent to commit the crime." Walters v. Maass, 45 F.3d 1355, 1349 (9th Cir. 1995) (citing United States v. Plenty Arrows, 946 F.2d 62, 66 (8th Cir. 1991)). Thus, the government must allege and prove "culpable intent and conduct constituting a substantial step toward commission of the crime that strongly corroborates that intent." United States v. DeRosa, 670 F.2d 889, 894 (9th Cir. 1982) (citing United States v. Snell, 627 F.2d 186, 187 (9th Cir. 1980)). The language employed in the indictment's substantial step allegation makes no reference to *mens rea* at all. Instead, it simply charges that Mr. Prieto-Aparicio "committed an overt act, to wit, crossing the border from Mexico into the United States, that was a substantial step towards committing the offense." The grand jury thus did not find, nor was it asked to find, "a substantial step toward commission of the crime *that strongly corroborates [the requisite] intent*." See DeRosa, 670 F.2d at 894. The indictment therefore fails to state an offense against the United States.

Because "[f]ailure to allege an essential element of the offense is a fatal flaw not subject to mere harmless error analysis[,]" the Ninth Circuit "reverse[d] the judgment against Resendiz and direct[ed] the district court to dismiss the indictment without prejudice to reindict[]." Resendiz-Ponce, 425 F.3d at 732-33

1 (citing <u>United States v. Du Bo</u>, 186 F.3d 1177, 1179 (9th Cir. 1999)). Accord <u>United States v. Pernillo-Fuentes</u>, 252 F.3d 1030, 1032 (9th Cir. 2001) (the remedy for the failure to allege an element of a section 1326 offense is dismissal). Accordingly, the instant indictment must likewise be dismissed because it fails to allege all essential elements of the offense of an attempted entry, in violation of 8 U.S.C. § 1326.

**B.     The Indictment must Be Dismissed Because If Fails to Set out Both the Date of a Prior Felony Conviction and Specific Date of Prior Removal from the United States**

Additionally, Mr. Prieto-Aparicio argues that the indictment must be dismissed because it fails to allege in the indictment, in contravention to <u>United States v. Salazar-Lopez</u>, 506 F.3d 748 (9th Cir. 2007), *both* the dates of a previous felony conviction and of a previous removal from the United States, subsequent to that conviction. The indictment here is insufficient because it only alleges that Mr. Prieto-Aparicio was removed from the United States subsequent to December 3, 2007. It does not specifically provide the date of a previous removal nor the date of any alleged previous felony conviction. Since the indictment fatally fails to allege all of the necessary elements of the offense, it must be dismissed. See <u>Du Bo</u>, 186 F.3d at 1179.

### III.

**THE COURT MUST SUPPRESS ANY PRE-*MIRANDA* WARNING STATEMENTS BY MR. PRIETO-APARICIO**

**A.     The Court Must Suppress Mr. PRIETO-APARICIO'S Alleged Pre-*Miranda* Statements Because They Were Elicited as the Result of Custodial Interrogation.**

"The ruling in <u>Miranda</u> prohibits 'custodial interrogation' unless the government first gives warnings to the [subject of the interrogation]." <u>United States v. Gonzalez-Sandoval</u>, 894 F.2d 1043, 1046 (9th Cir. 1990). Custodial interrogation occurs when under the totality of the circumstances the questions asked by the police are reasonably likely to elicit an incriminating response from the subject. <u>Id</u>. Although questions that include routine biographical information usually do not trigger the safeguard of <u>Miranda v. Arizona</u>, "[t]hat exception is inapplicable . . . where the elicitation of information regarding immigration status is reasonably likely to inculpate the [subject]." <u>Id</u>.

//
//
//

1    In United States v. Kim, 292 F.3d 971, 973 (9th Cir. 2002),[2] the Ninth Circuit noted that the
following factors are to be considered in deciding whether or not a police-dominated atmosphere exists:
"(1) the language used to summon the individual;  (2) the extent to which the defendant is confronted with
evidence of guilt;  (3) the physical surroundings of the interrogation;  (4) the duration of the detention;  and
(5) the degree of pressure applied to detain the individual." Id. (citations omitted); see also United States v.
Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980) (in context of custody at the border "[t]he factors to be
weighed are the language used to summon him, the physical surroundings of the interrogation, the extent to
which he is confronted with evidence of his guilt, and the pressure exerted to detain him.").  The Ninth Circuit
also recognizes that "question[s] implying that [the agent] suspected [the defendant] of criminal activity" can
give rise to a reasonable belief that one is not free to ignore the questions and leave. United States v. Chavez-
Valenzuela, 268 F.3d 719, 725 (9th Cir. 2001).[3]

It is not necessary that an individual be physically restrained in any fashion. In Beraun-Panez, the
Ninth Circuit found that an individual questioned out in an open field, who was neither held nor handcuffed
nor told that he was under arrest, was nonetheless in custody for Miranda purposes. Beraun-Panez held that
"[a]lthough not physically bound, Beraun-Panez was subjected to psychological restraints just as binding."
812 F.2d at 580.[4]

The government may rely on United States v. Galindo-Gallegos, 244 F.3d 728 (9th Cir. 2001), to
argue that the pre-Miranda interrogation of Mr. Prieto-Aparicio was not improper, or even violative of
Miranda, because Mr. Prieto-Aparicio was not in custody. In Galindo-Gallegos, the Ninth Circuit  held that
the defendant was not in custody because he was questioned in a group of fifteen to twenty people. Relying
on the Supreme Court's opinion in Berkermer v. McCarty, 468 U.S. 420 (1984), the Ninth Circuit noted that

---

[2]   In Kim, the Ninth Circuit found that a Korean woman who went to her own store, voluntarily, because an officer's visit prompted her to do so was in custody even though she was in familiar surroundings because the police "temporarily took over complete control of Kim's store creating a 'police-dominated atmosphere." 292 F.3d at 977. This combined with difficulty with English and isolation from family supported the finding that Kim did not willingly agree to submit to an encounter with the police. Id.

[3]   Chavez-Valenzuela involved a roadside stop of a motorist on a public street, out in the open.

[4]   The police confronted Beraun-Panez with his alienage, accused him of lying and kept him separated from his co-worker in a remote rural area.  Beraun-Panez, 812 F.2d at 580.

1  while the questioning in Galindo-Gallegos was "not as public as a traffic stop on a busy street, [as was the
2  case in Berkemer,] it was public for the reason that mattered; no alien had reason to fear abuse by an officer
3  and an unscrupulous officer would have been deterred from using illegitimate means by all the witnesses."
4  Galindo-Gallegos, 244 F.3d at 732.

5       Here, the criteria for a police-dominated atmosphere as articulated in Kim are clearly met. Regarding
6  the language used by the agent to summon Mr. Prieto-Aparicio, while the boiler-plate report does not state
7  the exact words used in identifying himself as a border patrol agent and to get Mr. Prieto-Aparicio into
8  custody, whatever words used clearly indicated to Mr. Prieto-Aparicio that he was a law enforcement officer
9  and that Mr. Prieto-Aparicio was in custody. The facts that the agent was in uniform and carrying a gun
10 substantiates this factor. Concerning the extent to which Mr. Prieto-Aparicio was confronted with guilt, he
11 was apprehended fifty yards north of the International Border with other suspected illegal aliens and
12 immediately interrogated about his immigration status. The physical surrounding of the interrogation was
13 clearly a remote area as evidenced by the reports description of the area as devoid of any landmarks such as
14 homes or businesses. It is, however, unclear how long the detention took place or the amount of pressure
15 applied to Mr. Prieto-Aparicio since the agent's report does not address how long the interrogation and
16 detention took and only uses boiler-plate language to describe Mr. Prieto-Aparicio's responses. Further, the
17 defendant in Kim was isolated from family, a fact that the Court gave great weight to. Kim, 292 F.3d at 977.
18 Here, Mr. Prieto-Aparicio was with strangers and an armed border patrol agent in a remote area, as in
19 Beraun-Panez. Thus, the statements must be suppressed.

20      The instant case can also be clearly distinguished from Galindo-Gallegos. From the material
21 produced by the government thus far it is apparent that there were only a two other suspected illegal aliens
22 present when Mr. Prieto-Aparicio was questioned, not the large group of "fifteen or twenty" at issue in
23 Galindo-Gallegos. Moreover, as evidenced by the report, they were clearly in a remote area. As stated before,
24 the report does not indicate the presence of any landmarks near where the arrest was made. This is certainly
25 not the type of "public" questioning that Galindo-Gallegos validated. It is, rather, the type of physical
26 environment that militates toward a finding of custodial interrogation and, therefore, statements must be
27 suppressed.
28 //

1    The physical environment of the questioning is not the only important factor. The substance of the
2 questioning is relevant as well. Here, the agent's questioning bore on Mr. Prieto-Aparicio's alienage, which
3 is an element of the charged offense, 8 U.S.C. § 1326. See United States v. Meza-Soria, 935 F.2d 166, 171
4 (9th Cir. 1991). This question in a setting so close to the border carried with it implicit suspicion of criminal
5 activity. A person, such as Mr. Prieto-Aparicio, subjected to such questioning in such a situation does not
6 reasonably feel free to leave, and, thus, is subject to custodial interrogation. See Chavez-Valenzuela, 268 F.3d
7 719, 725 (9th Cir. 2001).

8    In the context of an encounter between border patrol and an individual near the international border,
9 any questioning regarding an individual's alienage falls under the rubric of custodial interrogation.
10 Furthermore, because of the close relationship between civil and criminal immigration investigations, "[c]ivil
11 as well as criminal interrogation of in-custody defendants by INS [agents] should generally be accompanied
12 by the Miranda warnings." United States v. Mata-Abundiz, 717 F.2d 1277, 1279 (9th Cir. 1983).

13    In United States v. Gonzalez-Sandoval, 894 F.2d at 1043 (9th Cir. 1990), the defendant appeared at
14 a local police station to provide his state parole officer with a urine sample. Id. at 1046. A second parole
15 officer accused Gonzalez-Sandoval of being a deported alien and called the Border Patrol. Id. The Border
16 Patrol came to the station, and without warning him pursuant to Miranda, asked Gonzalez-Sandoval where
17 he was born and whether he possessed documents to verify the legality of his presence in the United States.
18 Id. The Border Patrol agents then took Gonzalez-Sandoval to the Calexico Border Patrol Station. Failing to
19 administer the Miranda warnings a second time, the agents questioned Gonzalez-Sandoval about any alias he
20 possessed. Id. The agents ran an INS record check against Gonzalez-Sandoval's name and alias, and found
21 Gonzalez-Sandoval's prior immigration record. Id. The Ninth Circuit found that the district court erred in
22 failing to suppress the unwarned, prompted statements by Gonzalez-Sandoval about his name and alias. Id.
23 at 1047.

24    In United States v. Mata-Abundiz, an INS agent visited the defendant in a state jail to obtain
25 biographical information to determine the defendant's citizenship status. 717 F.2d at 1278. The agent knew
26 about the state charges against Mata-Abundiz, and did not warn him pursuant to Miranda prior to obtaining
27 the biographical data. Id. Afterwards, the agent made further inquiries at his office and within three hours
28 returned to the jail to charge Mata-Abundiz with a federal immigration offense. Id. Despite the fact that the

agent characterized his interrogation as pursuant to a civil investigation, the court held that the agent should have warned Mata-Abundiz as required by <u>Miranda</u> because the agent knew his interrogation could lead to federal charges against the defendant. <u>Id</u>. at 1278-1279.

Here, it is obvious that the information the agent elicited from Mr. Prieto-Aparicio, during the interrogation, regarding his citizenship and application for permission to enter was "reasonably likely to inculpate" him. The questions served no purpose other than inculpation. They are in fact two of the four elements that they government must prove to obtain a conviction for a violation of 8 U.S.C. § 1326. Moreover, it is undisputed that Mr. Prieto-Aparicio was not read his <u>Miranda</u> rights at that point, nor advised that his answers to the agent's questions could result in federal charges against him.

Thus, Mr. Prieto-Aparicio moves to suppress all statements, and the fruits thereof, obtained in violation of <u>Miranda</u>.

**B.    Mr. Prieto-Aparicio Requests a Hearing Pursuant to 18 U.S.C. § 3501 Concerning The Admissibility Of Any Statements That The Government Intends to Use Against Him at Trial.**

This Court should conduct an evidentiary hearing to determine whether Mr. Prieto-Aparicio's statements should be admitted into evidence. Under 18 U.S.C. § 3501(a), this Court is required to determine, outside the presence of the jury, whether any statements made by Mr. Prieto-Aparicio were voluntarily made. In addition, § 3501(b) requires this Court to consider various enumerated factors, including whether Mr. Prieto-Aparicio understood the nature of the charges against him and whether he understood his rights.

Moreover, section 3501(a) requires this Court to make a factual determination. Where a factual determination is required, courts are obligated to make factual findings by Fed. R. Crim. P. 12. <u>See</u> <u>United States v. Prieto-Villa</u>, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression hearings are often as important as the trial itself,'" <u>Id.</u> at 610 (quoting <u>Waller v. Georgia</u>, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleadings.

**IV.**

**REQUEST FOR THE GRAND JURY TRANSCRIPT**

Mr. Prieto-Aparicio is requesting a copy of the transcript of the presentment of this case to the grand jury. The transcript is needed to examine the record of what specific instructions were given to the grand

jurors relating to their powers, the charges, and necessary elements of the offenses. Based in part of the review of the Grand Jury Instructions previously given, Mr. Prieto-Aparicio believes that the grand jury in his case was improperly instructed on elements of the charge. The Fifth Amendment Requires that "all elements of the offense [be] considered and found by the grand jury." United States v. Hooker, 841 F.2d 1225, 1230 (4th Cir. 1988) (citing Stirone v. United States, 361 U.S. 212 (1960)). Mr. Prieto-Aparicio has already filed an attack on the indictment based in part on faulty grand jury instructions, and seeks to file an additional motion dealing with the specific instructions given to the grand jury in his case. A transcript of the presentment of the elements of the offense is the only means by which Mr. Prieto-Aparicio can make his record.

FED. R. CRIM. P. 6(e)(3)(E) states:

> The court may authorize disclosure -- at a time, in a manner, and subject to any other conditions that it directs -- of a grand-jury matter:
> . ...
> (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.

FED. R. CRIM. P. 6(e)(3)(E) (emphasis added).

While grand jury proceedings are usually secret, see Rule 6(e)(2), exceptions are made when a defendant "shows that a ground may exist to dismiss the indictment." Rule 6(e)(3)(E)(ii). Disclosure of the grand jury transcript is the only manner in which Mr. Prieto-Aparicio can ascertain whether the grand jury was properly instructed on the charges.

In cases dealing with the testimony of witnesses, courts have allowed the production of grand jury transcripts, when a specific need has been shown. In Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211 (1979), the Supreme Court held that "[p]arties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Id. at 222. See also Dennis v. United States, 384 U.S. 855, 869 (1966). The calculus undertaken by courts has hinged upon the secrecy of the information requested.

> "It is clear . . . that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure. It is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification. In sum, . . . the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances

and the standards announced by this Court. And if disclosure is ordered, the court may include protective limitations on the use of the disclosed material . . . ."

Douglas Oil Co. of California, 441 U.S., at 222-23, (emphasis added) (citations omitted).

Here, the requested information only involves the instructions given to the grand jurors,[5] not a portion of the grand jury proceedings that invokes the public's interest in secrecy. Further, the statute only requires that Mr. Prieto-Aparicio show that a ground may exist. Rule 6(e)(3)(E)**(ii)** (emphasis added). That showing has been made in this case. The transcript of the grand jury presentment is the only record of these challenged instructions, and thus, must be disclosed under Rule 6(e)(3)(E)(ii).

## V.

## LEAVE TO FILE FURTHER MOTIONS

As information comes to light, due to the government providing additional discovery in response to these motions or an order of this Court, Mr. Prieto-Aparicio will almost certainly find it necessary to file further motions. It is, therefore, requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

## VI.

## CONCLUSION

For the foregoing reasons, Mr. Prieto-Aparicio respectfully requests that the Court grant the above motions.

Respectfully submitted,

/s/ Kris J. Kraus

Dated: August 29, 2008         **KRIS J. KRAUS**
                               Federal Defenders of San Diego, Inc.
                               Attorneys for Mr. Prieto-Aparicio

---

[5]    Mr. Prieto-Aparicio has also made a discovery request for the grand jury transcript concerning the testimony of any witnesses under FED. R. CRIM. P. 26.2. However, the instant memorandum deals with the portions of the transcript where the grand jury was instructed on the elements of the offense.